# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA- SOUTHERN DIVISION

| | |
|---|---|
| ERICA SVENNEBY, | Case No. SACV 17-00769-AS |
| Plaintiff, | **MEMORANDUM OPINION AND** |
| v. | **ORDER OF REMAND** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

## PROCEEDINGS

On May 1, 2017, Plaintiff filed a Complaint seeking review of the denial of her application for Disability Insurance Benefits. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 13-14, 31). On October 5, 2017, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 19-20). The parties filed a Joint Submission ("Joint Stip.") on April 25, 2018, setting

forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 29).

The Court has taken this matter under submission without oral argument. <u>See</u> C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On March 24, 2014, Plaintiff, formerly employed as a loan modification underwriter for a bank, a real estate broker, an EFT representative for a bank, and a bank teller (<u>see</u> AR 47-48, 170-74), filed an application for Disability Insurance Benefits, alleging an inability to work because of a disabling condition since June 8, 2012. (AR 151-54).

On October 27, 2015, the Administrative Law Judge ("the ALJ"), Helen E. Hesse, ("ALJ Duran"), heard testimony from Plaintiff (who was represented by counsel), medical expert Dr. John Morse, and vocational expert Elizabeth Brown-Ramos. (<u>See</u> AR 35-67).[1] On January 20, 2016, the ALJ issued a decision denying Plaintiff's application. (<u>See</u> AR 17-27). After determining that Plaintiff had severe impairments -- "degenerative disc disease of the lumbar spine; mixed connective tissue/autoimmune

---

[1] The ALJ denied Plaintiff's request to have Plaintiff's treating rheumatologist testify at the hearing. (<u>See</u> AR 17, 36, 149-50).

2

disorder with Sjogren's syndrome; positive ANA; positive RA; diagnosis of fibromyalgia with positive tender points; and mixed connective tissue disorder" (AR 20)[2] -- but did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments (AR 21), the ALJ found that Plaintiff had the residual functional capacity ("RFC")[3] to perform light work[4] with the following limitations: can climb, bend, balance, stoop, kneel, crouch or crawl occasionally; and can be exposed to unprotected heights occasionally. (AR 21-26).

Relying on the vocational expert's hearing testimony, the ALJ found that Plaintiff was capable of performing her past relevant work as a loan underwriter as generally performed and actually performed, as well as her past relevant work as a real estate agent as generally performed. (AR 26). The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 26-27).

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on March 8, 2017. (See AR 1-5). Plaintiff now seeks

---

[2] The ALJ found that Plaintiff's other physical impairments -- ovarian cysts, fibroids, irritable bowel and anemia -- were not medically determinable. The ALJ also found that Plaintiff's mental impairment -- mood disorder, not otherwise specified -- was nonsevere. (AR 20-21).

[3] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

3

judicial review of the ALJ's decision which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ erred in failing to properly: (1) consider the vocational and medical evidence; and (2) consider Plaintiff's testimony. (See Joint Stip. at 4-9, 12-21).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's second claim of error warrants a remand for further consideration. Since the Court is remanding the matter based on Plaintiff's second claim of error, the Court will not address Plaintiff's first claim of error.

**A.   The ALJ Did Not Properly Reject Plaintiff's Symptom Testimony**

Plaintiff asserts that the ALJ did not provide legally sufficient reasons for finding that Plaintiff's testimony about her symptoms and limitations was not credible. (See Joint Stip. at 12-21). Defendant asserts that the ALJ provided proper reasons for finding Plaintiff not credible. (See Joint Stip. at 21-22).

1.   Legal Standard

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult . . . ." Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, *3.[5]

---

[5]   SSR 16-3p, which superseded SSR 96-7p, is applicable to this case, because SSR 16-3p, which became effective on March 28, 2016, was in effect at the time of the Appeal Council's March 8, 2017 denial of Plaintiff's request for review.   20 C.F.R. § 404.1529, the regulation on evaluating a claimant's symptoms, including pain, has not changed.

5

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 798 F.3d 749, 755 (9th Cir. 2015)(citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen, supra; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Because the ALJ does not cite to any evidence in the record of malingering, the "clear and convincing" standard stated above applies.

Generalized, conclusory findings do not suffice. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004)(the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (citation and internal quotation marks omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001)(the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); Smolen, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

2.  <u>The ALJ's Credibility Finding</u>

Plaintiff made the following statements in a "Function Report - Adult" dated June 13, 2014[6]

> She lives with family in an apartment. She does not take care of anyone else or pets. (<u>See</u> AR 193).
>
> Her impairments cause her to experience the following symptoms: "pain; muscle spasms; stiffness; limited range of motion; numbness; tingling; swelling; shortness of breath; dizziness; lightheadedness; poor balance; lack of stamina and endurance; fatigue; weakness; heartburn; stomach cramping; constipation; diarrhea; headaches; sensitivity to light, noise, and climate changes; dry mouth; extreme thirst; depression (with feelings of helplessness, hopelessness, worthlessness, sadness, guilt, and frustration, isolation and lack of motivation); anxiety (with racing heart and shortness of breath lasting 15-60 mintues); mood swings; anger outbursts; crying spells (lasting for 20-30 minues)." She uses prescribed glasses, and takes medicine (Plaquenil) (but it causes her muscle weakness). (<u>See</u> AR 199, 201).
>
> As a result of her impairments, she no longer is able to work, bowl or hike. Her impairments affect her ability to sleep; she has difficulty falling and staying asleep due to the inability to find a comfortable position and due to racing thoughts. Her impairments affect her abilities to dress (she takes her time; she sits to put on pants, socks and shoes; she often wears slip-on shoes to limit her time standing and bending; she often wears comfortable clothing, including pajamas, and avoids wearing bras when she can; and she lacks motivation to change clothes); to bathe (she showers quickly; she leans on the shower walls; she uses a detachable shower head; and she lacks motivation to shower on a regular basis); to care for her hair (she has some difficulty reaching her arms up to wash and brush her hair; and she lacks motivation to care for her hair); to shave (she has difficulty grasping a razor; she has difficulty bending and reaching; she lacks motivation to shave); to feed herself ("[H]er appetite changes more often."); and to clip her toenails (she has difficulty bending; she gets pedicures). She does not need special reminders to take care of her personal needs and grooming or to take medicine. (<u>See</u> AR 194-95).
>
> On a daily basis, she prepares her own meals, simple things like cereal, smoothies, sandwiches and salads which do not take much time or preparation. It takes her 6 to 15

---

[6] The form was completed by Plaintiff's representative.

7

minutes to prepare a meal. Her impairments have caused her to avoid making big meals as often, and her boyfriend sometimes helps her prepare meals or has to cook meals himself. She has difficulty walking and standing in the kitchen for a long period of time, and she needs to take breaks. She takes her time taking items from cabinets and the refrigerator. She is careful when she lifts and carries pots and pans. She has difficulty concentrating, and easily forgets that she is cooking. Her household chores are washing dishes daily (a few minutes), wiping down counters and tables daily (a couple of minutes), dusting twice a month (20 to 30 minutes) and watering the patio plants every couple of days (a few minutes). She relies on her boyfriend to help her with household chores, because she has difficulty walking and standing for a long period of time and she has difficulty bending, squatting, kneeling and reaching. (See AR 195).

She goes out 4 to 6 days a week either driving a car or riding in a car. She is able to go out alone. She drives, but only for short distances. She has difficulty sitting in the car for a long period of time. She has difficulty twisting and turning, so she has to use the mirrors to check for traffic. She has to hold onto the car door and/or steering wheel to get in and out of the car. She experiences increased stress and anxiety when driving on major highway and in heavy traffic. Due to her lack of concentration, she sometimes forgets where she is going and how to get to a place, and she misses turns and gets lost. (See AR 196).

She shops in stores for groceries, household items, clothes, personal interest items and prescriptions 1 to 3 times a week (20 minutes to 2 hours) and on computer 2 times a month (20 minutes to a couple of days). She has to lean on a shopping cart for support. She takes her time taking items off of shelves. She has the bags packed light in order for her to load and unload. She shops when the stores are not as crowded. She takes a shopping list with her to remember what to buy. She cannot sit at a computer for a long period of time. She is able to pay bills, count change, handle a savings account, and use a checkbook or money orders. (See AR 197).

Her hobbies and interests are watching movies at home (daily), sitting at the pool (daily), and spending time on the computer (daily). She has to constantly shift positions, and she has difficulty paying attention and recalling what she watched or saw. Prior to her impairments, she did not have difficulty sitting, paying attention, or remembering. (See AR 197-98).

She spends time with her boyfriend and her son daily, and she visits with her friends and family members regularly. She does not go anywhere on a regular basis. She has problems getting along with others; she easily becomes irritated and frustrated with others. Prior to her impairments, she went out with her friends more often. (See AR 198-99).

8

Her day consists of the following: waking up around 10:00 or 11:00 a.m.; trying to work on returning phone calls and making appointments; sitting at the pool to get some sun; possibly shopping or cleaning around the house; preparing a light lunch; talking to her son and taking him to work if necessary; dressing and showering at some time during the day; making dinner at around 8:30 p.m.; cleaning up and visiting her boyfriend and son; and going to bed around midnight. (See AR 193).

Her impairments affect her lifting, squatting, bending, standing, reaching, walking (she can walk about one-half of a mile before she has to stop and rest for at least 10 to 15 minutes), sitting, kneeling, talking, stair-climbing, memory (short-term), completing tasks, concentrating (the amount of time she can concentrate depends on how she feels and what she is doing at the time), understanding, and following instructions (she has to reread written instructions and to have spoken instructions repeated). Her ability to work is most significantly impacted by her problems with bending, standing, walking, sitting and concentrating. She does not have difficulty getting along with authority figures, and she has never been fired or laid off from a job because of problems getting along with others. Stress causes her to become anxious, frustrated and depressed. Most of the time she handles changes in routine well, but sometimes changes in routine cause her stress. (See AR 193, 199-201).

Plaintiff gave the following testimony at the administrative hearing (see AR 44-63):

She is 43 years old, 5'6" tall, and weighs 135 to 140 pounds. She does not have a significant other. She graduated from high school in 1990, and attended college in 1991 and 1992 (but did not graduate). Since January 2015, she has lived in an apartment with her mother, who works for Verizon. She lives with her mother for free, but pays the utilities. Prior to January 2015 she lived with her son. She worked as a loan modification underwriter for JPMorgan until June 8, 2012, when she left on disability (severe pain and stress). In January 2015, after two years of disability (2013 to 2015, during which time the doctor did not release her to work), JPMorgan terminated her. She had talked to a person at JPMorgan about returning to work with restrictions (10 to 20 hours a week, sitting, standing, taking frequent breaks), but she was told her restrictions could not be accommodated. Her real estate license expired in 2013. She drives her mother's car sometimes and a 1961 Ford Falcoln (she does not like to drive it; her lease on another car expired in January 2015). (See AR 44-49, 52, 58-59).

She cannot work because of severe pain (body, hands, neck, back, shoulders, lower waist, migraines [15 days a month], fatigue, insomnia, anxiety, irritable bowel syndrome, dry mouth, frequent urination, constipation, and diarrhea. She takes Plaquenil, nortiptyline, cyclobenzaprine, Ambien, and Soma (for the last few months). She believes the prescription medications help her, but she does not know if they do enough (the medications helped when she started taking them). She also takes supplements and various over-the-counter medications, such as Pepto Bismol, medicines for dry mouth and dry eyes, Aleve, Excedrin and Tylenol. She believes the over-the-counter medications help. She sees somebody for mental health counseling through her church. She presently does not attend support groups in person due to difficulty getting around in her car. Prior to being diagnosed, she participated in an 8-week behavioral cognitive therapy program. She has been involved with online support groups for arthritis, fibromyalgia, Sjogren's and Lupus, and she used to attend a support group for arthritis two to three times a month. (See AR 55-61).

On a daily basis, she gets up between 8 and 10 a.m. and retires at 11 p.m. She has a cup of coffee and then tries to eat. She usually showers within an hour of waking up, unless she has to make telephone calls or leave for a doctor's appointment. She brushes her teeth twice a day (at least) and washes her hair twice a week. With respect to chores, she washes her own dishes and does her own laundry (which usually makes her hurt). Her mother takes out the trash, cleans the floors, etc. She makes her own meals (prepared, light, healthy meals) and her mother also makes meals. (See AR 50-52).

She does general restorative yoga at home (once or twice a week, but sometimes not for a couple of weeks, depending on how she is feeling), as well as deep breathing, meditation, chiropractor, massage and accupuncture. On good days she tries to walk about one-half of a mile (every day, sometimes 3 or 4 days a week), but she has not been walking for a couple weeks. She used to do aquatic therapy in the warm pool of her old apartment. She wants to go to her gym, but she has not felt good enough to drive there (3 to 4 miles away). On good days (which occur between one-third and one-half of the time) she does not have headache pain and is not fatigued (so she can go to doctors' appointments, the gym, the swimming pool, and can try to do yoga, grocery shopping, doing laundry, etc.). On bad days she spends most of the day in bed because of fatigue and pain, unless she has something to do (i.e., doctor's appointment). (See AR 52-53, 60-63).

She has a laptop computer. She is barely on Facebook. She does not watch much television. She reads books when she can. She goes to church about once a month. Her only hobby is trying to get healthy, learning about nutrition. (See AR 53-55).

>     She drinks two glasses of wine twice a week, when she
> visits with friends or attends small parties. (See AR 49-
> 50).

After briefly summarizing Plaintiff's testimony (see AR 22), the ALJ made the following findings: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent for the reasons explained in this decision." (AR 22).

The ALJ then discussed most of the medical evidence in the record, (See AR 22-24). Following the discussion, the ALJ addressed Plaintiff's credibility as follows:

> The undersigned has analyzed the credibility of the
> claimant's allegations pursuant to SSR 96-7p and finds they
> are not fully credible. Despite her subjective symptoms and
> difficulties, the claimant is able to perform basic
> independent care, prepare simple meals, do household chores,
> including washing dishes, laundry, make bed; go outside,
> drive, take son to work when needed, shop in stores, handle
> finances, watch movies, sit at the pool to get sun, read,
> walk about a half mild (sic) three to five days a week; do
> yoga, spend time on laptop going on Facebook, nutrition
> research and online support groups; attend church once a
> month, and socialize with boyfriend, friends and family (Ex.

11

4E; 9F:4;[7] claimant's testimony). Overall, the claimant's relatively intact daily activities are consistent with the residual functional capacity described above. [¶] The undersigned notes that multiple factors undermine the credibility of the claimant's allegations. The documented objective evidence discussed and the claimant's self-reported range of everyday activities are inconsistent with functional limitations to the degree alleged.

(AR 24, footnote added).

3. <u>The ALJ's Assessment of Subjective Symptom Testimony</u>

As set forth below, the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's testimony about the intensity, persistence and limiting effects of her pain and symptoms.[8]

---

[7] The ALJ cites to page 4 of the June 21, 2014 report of examining psychiatrist Sohini P. Parikh. Under "Current Level of Functioning," Dr. Parikh wrote the following:

> The claimant lives with her boyfriend and son. The claimant is able to drive. The claimant is able to manage funds and pay bills. The claimant is able to do cooking, shopping, and housekeeping. [¶] The claimant wakes up at around 10 am. The claimant cleans herself. She goes to her appointments. She goes onto the computer. She sometimes drops her son off at work. The claimant also does some light work. [¶] The claimant gets along with family members. The claimant does have close friends. The claimant has no problems with neighbors. [¶] The claimant can focus attention during this evaluation. The claimant does not have cognitive problems completing household tasks. [¶] The claimant can follow simple oral and written instructions. The claimant has no difficulty making decisions.

(AR 982).

[8] The Court will not consider reasons for discounting Plaintiff's subjective symptom testimony that were not given by the ALJ in the decision. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)("We are constrained to review the reasons the ALJ asserts.";
(continued...)

First, the ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Smolen, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").

Second, the ALJ's discounting of Plaintiff's testimony about her symptoms and functional limitations based on her ability to perform certain daily activities, such as performing basic independent care, preparing simple meals, doing household chores (washing dishes, doing laundry, making bed), going outside, driving, taking her son to work when needed, shopping in stores, handling finances, watching movies, sitting at the pool, reading, walking, doing yoga, spending time on laptop going on Facebook, conducting nutrition research, participating in online support groups, attending church once a month, and socializing with boyfriend, friends and family, was not a clear and convincing reason. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."); Reddick, supra ("Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility."). While

---

⁸ (...continued)
citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947), Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)); and Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014)("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

a plaintiff's ability to spend a "*substantial part*" of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting may be sufficient to discredit her, here, there is no evidence that Plaintiff was spending a substantial part of her day engaged in these activities or that the physical demands of such tasks as performing basic independent care, preparing simple meals, doing household chores (washing dishes, doing laundry, making bed), going outside, driving, taking son to work when needed, shopping in stores, handling finances, watching movies, sitting at the pool, reading, walking, doing yoga, spending time on her laptop going on Facebook, conducting nutrition research, participating in online support groups, attending church once a month, and socializing with her boyfriend, friends and family were transferable to a work setting. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). Indeed, at the hearing, the ALJ did not ask Plaintiff about the amount of time it took her to do or how often she did many of the above activities. Thus, Plaintiff's admitted daily activities do not constitute a legally sufficient reason to reject Plaintiff's subjective symptom testimony.

It is not clear whether the ALJ considered Plaintiff's testimony about her limited abilities to perform such daily activities (see AR 193 [Plaintiff testified, "I may shop or clean around the house. I try to divide my energy and take my time doing tasks to avoid over exerting myself and putting myself out for a couple of days."], 194 [Plaintiff testified she takes her time getting dressed, sits to put on clothes, wears certain shoes to limit time standing and bending, wears certain clothes, and avoids wearing bras], id. [Plaintiff testified she showers

quickly, leans on shower walls, and uses a detachable shower head to limit bending and reaching], id. [Plaintiff testified she has difficulty reaching her arms up to wash and brush her hair], id. [Plaintiff testified she has difficulty shaving because of difficulties with bending, reaching and grasping the razor], 195 [Plaintiff testified she has difficulty clipping her toenails because of difficulty with bending]; id. [Plaintiff testified her boyfriend sometimes has to help her prepare meals or had to cook them on his own, she has difficulty preparing meals because of difficulty with walking and standing for a long period of time, she takes her time getting items from cabinets and the refrigerator, she had to be careful lifting and carrying pots and pans, and she has trouble concentrating when making a meal], 196 [Plaintiff testified she has to rely on her boyfriend to help her with chores because of difficulties with walking and standing for a long period of time, and she has difficulty completing chores because of difficulties with bending, squatting, kneeling and reaching], id. [Plaintiff testified she drives short distances only, cannot sit in a car for a long period of time, has to rely mostly on the car mirrors to drive, and misses turns and gets lost], id. [Plaintiff testified she has to lean on her shopping cart for support, she has to take her time taking items off the shelves, she makes sure the shopping bags are packed light, and she cannot sit at the computer for a long period of time], 198 [Plaintiff testified that she has to constantly shift positions when she watches movies at home, sits at the pool, and spends time on the computer], 199 [Plaintiff testified she is able to walk one-half of a mile before she has to stop and rest for at least 10 to 15 minutes], 51 [At the hearing, Plaintiff testified she usually hurts after she does her own laundry], 51-52 [At the hearing, Plaintiff

15

testified her mother also makes meals], 52 [At the hearing, Plaintiff testified she had not been able to do aquatic therapy lately], id. [At the hearing, Plaintiff testified that she does yoga at home once or twice a week, but that she sometimes is not able to do yoga for a couple of weeks based on how she is feeling], 53 [At the hearing, Plaintiff testified she had not felt good enough recently to drive her car 3 to 4 miles to the gym], id. [At the hearing, Plaintiff testified that on "good days" she tries to walk about one-half of a mile and that sometimes she can walk every day or 3 to 4 days a week, but that she has not been able to walk much recently], id. [At the hearing, Plaintiff testified she is barely on Facebook], 54 [At the hearing, Plaintiff testified she tries to read books "when [she] can"], id. [At the hearing, Plaintiff testified she attends church "[m]aybe once a month"], and 57 [At the hearing, Plaintiff testified that she is involved in support groups "[a]s much as [she] can be", but that "[s]ometimes she [is] in too much pain to want to go out"]. Therefore, the degree to which Plaintiff could perform such daily activities may not have been inconsistent with her testimony regarding her symptoms and limitations. See Reddick, supra; see also Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.").

Third, although the ALJ also found that there was a lack of objective medical evidence supporting Plaintiff's testimony concerning her symptoms and limitations, this factor cannot, by itself, support an

adverse finding about Plaintiff's testimony. See <u>Trevizo v. Berryhill</u>, 862 F.3d 987, 1001 (9th Cir. 2017)(once a claimant demonstrates medical evidence of an underlying impairment, "an ALJ 'may not disregard [a claimant's testimony] solely because it is not substantiated affirmatively by objective medical evidence.'"; quoting <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006)); <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 602 (9th Cir. 1998); <u>see</u> <u>also</u> SSR 16-3p, 2017 WL 5180304, *7 ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record. . . . However, we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment related-symptoms alleged by the individual.").

Because the Court finds that the the ALJ did not discount Plaintiff's symptom testimony on legally permissible grounds, the Court is unable to defer to the ALJ's credibility determination. <u>Cf.</u> <u>Flaten v. Sec'y of Health & Human Servs.</u>, 44 F.3d 1453, 1464 (9th Cir. 1995)(the court will defer to the ALJ's credibility determinations when they are appropriately supported in the record by specific findings justifying that decision)(citations omitted).

**B. Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.

Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, supra, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's symptom testimony, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[9]

//
//
//

---

[9] The Court has not reached any other issue raised by Plaintiff except to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See Garrison v. Colvin, 759 F.3d 995, 1021 (2014). Accordingly, the Court declines to rule on Plaintiff's claim regarding the ALJ's error in failing to properly consider the vocational and medical evidence (see Joint Stip. at 5-9). Because this matter is being remanded for further consideration, this issue should also be considered on remand.

18

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 22, 2018

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE